UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Kevin Murphy,<br>Plaintiff,<br><br>vs.<br><br>The Connor Group, A Real Estate Investment Firm, LLC and City Walk TIC I, LLC,<br>Defendants. | **COMPLAINT AND DEMAND FOR JURY TRIAL** |

PLAINTIFF, as and for his causes of action (i.e., violation of the Fair Housing Act and the Minnesota Human Rights Act) against the above-named Defendant, states and alleges as follows:

### Introduction

1. The following alleges a complete disregard of their duties under the federal Fair Housing Act ("FHA") and the Minnesota Human Rights Act ("MHRA") on the part of defendant landlords. Plaintiff made repeated requests for a reasonable accommodation of his emotional support animal to Defendants. Rather than respond or otherwise meaningfully engage with Plaintiff, they ignored his requests and continued to illegally charge him "pet rent." As a result, Plaintiff moved from the apartment complex at the conclusion of his lease. After he left, Defendants refused to give Plaintiff his security deposit. Consequently, Plaintiff brings this action.

1

## Statement of Jurisdiction

2. This Court has Jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§1331 and 1367 and the Fair Housing Act ("FHA"), 42 U.S.C. §3613.

## Venue

3. Venue is proper pursuant to 28 U.S.C. §1391(b)(1).

## Parties

4. Plaintiff Kevin Murphy is an adult resident of Washington County, Minnesota.

5. Defendant City Walk TIC I, LLC ("City Walk") is a foreign limited liability company with a registered office located in Brooklyn Center, Minnesota. City Walk is a housing provider within the meaning of the FHA, an owner of real property within the meaning of the MHRA, and a "landlord" as defined by Minn. Stat. §504B.001 subd. 7 because it is the fee owner of the Premises.

6. Defendant The Connor Group, A Real Estate Investment Firm, LLC ("The Connor Group") is a foreign limited liability company with a registered office located in Brooklyn Center, Minnesota. The Connor Group is housing provider within the meaning of the FHA, a managing agent of rental property within the meaning of the MHRA, and a "landlord" as defined by Minn. Stat. §504B.001 subd. 7 because it is the fee owner of the Premises. At all times relevant to this Complaint, The Connor Group was acting as an agent of City Walk.

**Facts**

7.  On or about August 10, 2019, Plaintiff Kevin Murphy signed a residential lease for a third-floor unit in the City Walk at Woodbury Apartment Community located at 10300 City Walk Dr., Woodbury, Minnesota 55129 ("the Premises").

8.  The Premises are, and at all times relevant to this complaint were, owned by Defendant City Walk and managed by The Connor Group.

9.  According to the Washington County assessor, the Premises have an estimated market value in excess of $53 million.

10. Prior to moving into the Premises, Plaintiff was the survivor of a residential house fire.

11. The circumstances surrounding the fire resulted in Plaintiff experiencing symptoms of major depression and post-traumatic stress disorder ("PTSD").

12. Shortly after the commencement of Mr. Murphy's tenancy in August of 2019, the fire alarms kept going off, thereby triggering his mental health related symptoms.

13. On the advice of Mr. Murphy's physician, he purchased a dog named Jade to serve as an emotional support animal.

14. At the time he obtained (name) in September of 2019, Mr. Murphy opted not to request a reasonable accommodation and instead agreed to pay the fees pursuant to his lease's Pet Addendum.

15. On or about December 5, 2019, Mr. Murphy met with a representative with The Connor Group named "Laura".

16. At the meeting with Laura, Mr. Murphy provided her with a letter from his physician stating that he should be allowed to keep a cat or dog in his apartment as an emotional support animal. *See* Physician Letter, *attached hereto as* Exhibit A.

17. Upon providing her with Exhibit A, Mr. Murphy requested that Defendant's accommodate his disability by no longer charging him the monthly pet fee.

18. Rather than accommodate Mr. Murphy, Laura told Mr. Murphy that the letter from his physician was inadequate and that he had to "register" ("name") with the state of Minnesota.

19. On or about December 30, 2019, a representative of The Connor Group named "Katie" emailed Mr. Murphy to inform him that he owed $50.00 in rent from December and that January rent wouldn't be accepted until the arrear had been paid.

20. Mr. Murphy replied to Katie and informed her that he was under the impression that he didn't owe the $50.00 because this amount constituted pet rent for which he shouldn't be responsible due to the accommodation of his disability.

21. Katie further informed Mr. Murphy that the $50.00 in pet rent would continue to be charged until Mr. Murphy until he provided documentation from a veterinarian that Jade was enrolled in "the program".

22. Mr. Murphy was confused and asked Katie what "program" she was talking about.

23. Katie merely reiterated that Jade had to be enrolled in "the program" without providing any further elaboration.

24. During this same exchange, Katie also told Mr. Murphy that he needed to provide "another form stating that you are in need of a support animal."

25. Mr. Murphy was confused and reminded Katie of the Physician Letter previously provided to The Connor Group.

26. Again, Katie merely repeated that Mr. Murphy need to provide "verification you are to have [an emotional support animal]" without further elaborating on Mr. Murphy's request for clarification.

27. Rather than risk the assessment of late fees or eviction, Mr. Murphy continued to pay the pet rent.

28. During this same time, Mr. Murphy had a couple of minor repair items in his unit that needed to be addressed by building maintenance.

29. Those issued include a malfunctioning garbage disposal and an entry light switch.

30. On or about December 30, 2019, Mr. Murphy placed repair requests related to those items.

31. Previously, maintenance had been extremely prompt in addressing any necessary requests placed by Mr. Murphy.

32. However, following his support animal accommodation request, no action was taken for several weeks on Mr. Murphy's requests.

33. On or about March 5, 2020, the undersigned counsel mailed a letter to The Connor Group on Mr. Murphy's behalf. *See* Attorney Letter, *attached hereto as* Exhibit B.

34. In the letter, the undersigned requested that Mr. Murphy no longer be charged pet rent and that the $200.00 paid since the time of his accommodation request be funded to him.

35. Additionally, the letter also contained a request that the aforementioned repair requests be completed.

36. Shortly after the receipt of the letter, the requested repairs were made to Mr. Murphy's unit.

37. However, neither Mr. Murphy nor the undersigned received any response regarding the accommodation request and the $200.00 was not refunded.

38. Instead, The Connor Group charged Mr. Murphy $50.00 in pet rent for April of 2020.

39. Tired of this treatment, Mr. Murphy decided to move out at the expiration of his lease.

40. Mr. Murphy vacated the Premises.

41. Pursuant to Minn. Stat. §504B.178, within 21 days of the termination of the tenancy, Defendants were required to either return Plaintiffs' security deposit or provide a written statement showing the specific reason for the withholding of the deposit.

42. Defendants neither returned Plaintiffs deposit nor provided a written statement showing the specific reason why they withheld Plaintiffs deposit within 21 days of the termination of the tenancy.

43. As a result of Defendants' conduct, Plaintiff has suffered out-of-pocket damages, sadness, frustration, and humiliation.

## Specific Claims

Count I– Disability Discrimination and Failure to Provide Reasonable

Accommodation/Modification (42 U.S.C §3601, *et. seq.*)

44.     Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

45.     Plaintiff suffers from disabilities within the meaning of the FHA.

46.     Defendants knew or reasonably should have known of Plaintiff's disabilities based upon the reasonable accommodation/modification requests of Mr. Murphy.

47.     Plaintiff requested an accommodation/modification that was necessary to afford the Plaintiff an equal opportunity to use and enjoy the dwelling.

48.     The requested accommodation/modification was reasonable.

49.     Defendants refused to make the requested accommodation/modification.

50.     The foregoing acts of Defendants constitute a continuing violation of the FHA.

51.     The foregoing acts of Defendants amount to discrimination on the basis of handicap pursuant to the Fair Housing Act, 42 U.S.C. § 3604(f)(1)(A-C), (f)(2)(A-C), and (f)(3)(A-B).

52.     As a direct and proximate result of the foregoing violations of the FHA by Defendants, Plaintiff has suffered injuries and damages and is entitled to the relief set forth more fully herein.

Count II- Retaliation (42 U.S.C. §3601, *et. seq.*)

53.     Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

54. Plaintiff engaged in protected activity pursuant to the FHA.

55. Defendants knew Plaintiff had engaged in such protected activity.

56. Defendants took adverse action against Plaintiff as a direct and proximate result of Plaintiff engaging in protected activity.

57. The foregoing acts of Defendants constitute a continuing violation of the FHA.

58. As a direct and proximate result of the foregoing violations of the FHA by Defendants, Plaintiff has suffered injuries and damages and is entitled to the relief set forth more fully herein.

Count III- Disability Discrimination and Failure to Provide Reasonable Accommodation/Modification (Minn. Stat. §363A.01, *et. seq.*)

59. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

60. Plaintiff suffers from disabilities within the meaning of the MHRA.

61. Defendants knew or reasonably should have known of Plaintiff's disabilities based upon the reasonable accommodation/modification requests of Mr. Murphy.

62. Plaintiff requested an accommodation/modification that was necessary to afford Plaintiff an equal opportunity to use and enjoy the dwelling.

63. The requested accommodation/modification was reasonable.

64. Defendants refused to make the requested accommodation/modification.

65. The foregoing acts of Defendants constitute a continuing violation of the MHRA.

66. The foregoing acts of Defendants amount to discrimination on the basis of handicap pursuant to the Minn. Stat. §363A.10 subd. 1(1-2).

67. As a direct and proximate result of the foregoing violations of the FHA by Defendants, Plaintiff has suffered injuries and damages and is entitled to the relief set forth more fully herein.

## Count IV- Reprisals (Minn. Stat. §363A.01, *et. seq.*)

68. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

69. Plaintiff engaged in protected activity pursuant to the MHRA.

70. Defendants knew Plaintiff had engaged in such protected activity.

71. Defendants took adverse action against Plaintiff as a direct and proximate result of Plaintiff engaging in protected activity.

72. The foregoing acts of Defendants constitute a continuing violation of the MHRA.

73. As a direct and proximate result of the foregoing violations of the MHRA by Defendants, Plaintiff has suffered injuries and damages and is entitled to the relief set forth more fully herein.

## Count V – Failure to Return Security Deposit (Minn. Stat. §504B.178)

74. Plaintiffs incorporate by reference all of the above paragraphs of this Complaint as though fully stated herein.

75. Defendants failed to return Plaintiffs security deposit pursuant to Minn. Stat. §504B.178, and in doing so, acted in bad faith.

## Jury Demand

76. Plaintiff hereby demands a trial by jury.

## Prayer for Relief

WHEREFORE, Plaintiff, by and through his attorney, respectfully pray for Judgment to be entered in favor of Plaintiff and against Defendant as follows:

    a.    All actual compensatory damages suffered;

    b.    Punitive damages;

    c.    Injunctive relief;

    d.    Reasonable attorney's fees, litigation expenses, and cost of suit; and

    e.    Any other relief deemed appropriate by this Honorable Court.

Dated: October 6, 2020

Respectfully Submitted,

PETERSON LEGAL, PLLC

s/Ryan D. Peterson
Ryan D. Peterson (#0389607)
5201 Eden Avenue, Suite 300
Edina, MN 55436
(612) 367-6568
ryan@peterson.legal

ATTORNEY FOR PLAINTIFF